UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RILEY,<br><br>    Plaintiff,<br><br>    v.<br><br>MEDLINE INDUSTRIES, INC.; and DOES 1–100, inclusive,<br><br>    Defendants. | No. 2:18-cv-02626-TLN-EFB<br><br>**ORDER** |

This matter is before the Court on Defendant Medline Industries, Inc.'s ("Defendant") Motion to Compel Arbitration and Stay Proceedings. (ECF No. 6.) Plaintiff Charles Riley ("Plaintiff") filed an opposition. (ECF No. 9.) Defendant filed a reply. (ECF No. 10.) For the reasons set forth below, the Court GRANTS Defendant's motion. However, the Court STAYS the action pending completion of arbitration rather than dismissing it as Defendant requests.

///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant hired Plaintiff as a delivery driver in January 2017. (ECF No. 1 at 3.) Prior to beginning his employment with Defendant, Plaintiff signed an employment and confidentiality agreement, which included an arbitration provision. (ECF No. 9 at 8.) The arbitration provision requires that Plaintiff submit any dispute related to or arising out of employment with Defendant to binding arbitration. (ECF No. 6-3 at 19–20.) The arbitration provision also expressly prohibits class, collective, or representative adjudication of any disputes. (*Id.* at 20.)

On September 25, 2018, despite the arbitration provision, Plaintiff filed a putative class and collective action Complaint against Defendant, alleging various violations of the Fair Labor Standards Act, the California Labor Code (including a claim brought under the Private Attorneys General Act ("PAGA"))[1], and the California Business & Professions Code. (*See generally* ECF No. 1.) Defendant filed this Motion to Compel Arbitration on October 17, 2018. (ECF No. 6.)

## II. STANDARD OF LAW

The parties do not dispute that the Federal Arbitration Act ("FAA") governs Defendant's motion. 9 U.S.C. §§ 1 *et seq*. Under the FAA, a district court typically determines two gateway issues: (1) whether a valid agreement to arbitrate exists; and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). If the court is "satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). If a court "determines that an arbitration clause is enforceable, it has the

---

[1] On September 30, 2020, the Court approved the parties' stipulation to dismiss Plaintiff's Fifth Claim for Relief for civil penalties under the Private Attorney General Act with prejudice. (ECF No. 21.)

discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration." *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2-14-CV-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015).

### III.  ANALYSIS

At the outset, the parties disagree about whether the arbitration agreement is enforceable. Plaintiff argues the arbitration agreement is unenforceable because it is ambiguous, procedurally unconscionable, and substantively unconscionable. (ECF No. 9 at 6–7.) For its part, Defendant argues that issues of enforceability must be decided by an arbitrator, not the Court, because the agreement "clearly and unmistakably" delegates the gateway issues to an arbitrator. (ECF No. 6-1 at 13.) However, Defendant also responds to the merits of Plaintiff's arguments. (*See generally* ECF No. 10.) The parties further disagree about whether Plaintiff's class and PAGA claims are waived and whether the PAGA claims are arbitrable.[2] (ECF No. 6-1 at 19; ECF No. 9 at 16.)

#### A.  Delegation Provision

As mentioned, the Court typically must decide two gateway issues on a motion to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Lifescan*, 363 F.3d at 1012. However, determination of these gateway issues "can be expressly delegated to the arbitrator where the parties clearly and unmistakably provide otherwise." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). For example, the Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) ("[L]anguage delegating to the arbitrators the authority to determine the validity or application of

---

[2]  As will be discussed, the Court concludes that the delegation provision in the parties' agreement delegates to the arbitrator all questions of arbitrability, including issues of enforceability and whether the agreement covers a particular controversy. As such, the Court does not reach the merits of the parties' arguments about Plaintiff's class and PAGA claims.

any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement."). Put simply, parties can include a delegation provision in an arbitration agreement that requires an arbitrator to decide gateway issues rather than the Court.

Here, the arbitration agreement contains the following language: "Employee and Medline agree that any dispute or controversy covered by this Agreement or arising out of, relating to, or concerning any interpretation, construction, performance, validity, enforceability or breach of this Agreement . . . shall be resolved by binding arbitration, not by court or jury trial." (ECF No. 6-3 at 20.) In *Rent-A-Ctr.*, the Supreme Court held that this type of language constitutes a valid delegation provision. *Rent-A-Ctr.*, 561 U.S. at 66, 72–74; *see, e.g.*, *Mohamed*, 848 F.3d at 1208–09; *Fischer v. Rent-A-Ctr., Inc.*, No. 2:14-CV-00918-MCE-AC, 2014 WL 3729553, at *4 (E.D. Cal. July 24, 2014).

Importantly, when a delegation provision is embedded within a larger arbitration agreement — as it is here — the Court need not consider arguments that are not "specific to the delegation provision." *Rent-A-Ctr.*, 561 U.S. at 72–73 ("[U]nless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *see also Brennan*, 796 F.3d at 1133 (affirming district court's dismissal in favor of arbitration because the plaintiff failed to make any arguments specific to the delegation provision embedded within an arbitration agreement).

As in *Rent-A-Ctr.*, Plaintiff in this case "fails to rebut or otherwise address in any way [Defendant's] argument that the [a]rbitrator must decide [Plaintiff's] challenge to the enforceability of the [a]greement." *See Rent-A-Ctr.*, 561 U.S. at 73. Indeed, Plaintiff does not even use the term "delegation provision" anywhere in his opposition. *See id.* at 72–73. To the extent certain arguments within Plaintiff's opposition can be generously construed as being directed at the delegation provision, however, the Court will address those arguments.

B.    Ambiguity

Plaintiff argues the arbitration provision is ambiguous and unenforceable for two reasons. First, Plaintiff argues that § 3(d) of the arbitration agreement, which provides "any dispute

4

1  covered by this Agreement . . . shall be resolved by binding arbitration, not by court or jury trial,"
2  directly contradicts § 3(c), which provides "[a]ny dispute related to this Agreement shall be
3  resolved exclusively in a state or federal court of competent jurisdiction in Lake County, Illinois."
4  (ECF No. 9 at 9 (citing ECF No. 6-3 at 19).)  Second, Plaintiff argues the agreement is ambiguous
5  because it "fails to specify how arbitration is to be initiated, what rules will apply, what the
6  qualifications of the neutral [arbitrator] are to be, where any arbitration is to be held, what
7  discovery is permitted, what remedies are available, and the like."  (*Id.* at 10.)

8  Plaintiff rests his arguments on a single California appellate case: *Flores v. Nature's Best
9  Distribution, LLC*, 7 Cal. App. 5th 1 (2016).  In *Flores*, the plaintiff filed a complaint against her
10 previous employers, alleging various claims arising from her employment.  7 Cal. App. 5th at 3.
11 As in the instant case, the defendants in *Flores* filed a petition to compel arbitration of the
12 plaintiff's claims based on evidence that the plaintiff signed an agreement for alternative dispute
13 resolution as part of a new employee packet.  *Id.*  The trial court denied the defendants' petition,
14 and the defendants appealed.  *Id.*

15 The appellate court agreed with the trial court that the agreement "fail[ed] to reflect
16 plaintiff's agreement to submit her claims against defendants . . . to binding arbitration pursuant
17 to its terms."  *Id.* at 9.  First, the court found the agreement failed to identify which parties agreed
18 to arbitration.  *Id.*  Second, the court found the agreement failed to define which disputes would
19 be subject to arbitration before the American Arbitration Association ("AAA") and which would
20 be subject to resolution through the grievance and arbitration procedure contained in a collective
21 bargaining agreement.  *Id.* at 10.  Third, the court noted that the agreement failed to identify
22 which set of AAA rules would apply and the defendants failed to produce any particular set of
23 AAA rules that were in effect at the time plaintiff signed the agreement.  *Id.*  For these reasons,
24 the court found the agreement to be ambiguous and unenforceable.  *Id.* at 11 ("We cannot
25 conclude the parties reached agreement on the matter of submitting any or all of plaintiff's claims
26 to final and binding arbitration as contemplated by the Agreement.").

27 Plaintiff argues that like the agreement in *Flores*, the agreement at issue in this case is
28 ambiguous as to the scope of the agreement and as to the governing rules and procedures for any

such arbitration. (ECF No. 9 at 10.) However, *Flores* is distinguishable from the instant case in several respects. As an initial matter, *Flores* was decided by a California appellate court and did not involve the FAA. Moreover, unlike *Flores*, Plaintiff in this case does not argue there is any ambiguity as to the identity of the parties to the agreement. Finally, the *Flores* court found the agreement to be ambiguous because the agreement did not indicate which of two possible sets of rules would apply to arbitration. 7 Cal. App. 5th at 10. In contrast, the agreement in the instant case is wholly silent as to what arbitration procedures will apply. Regardless, Plaintiff fails to persuade the Court that the absence of specific arbitration procedures renders the agreement irreparably vague. To the contrary, "[w]hen an arbitration clause is ambiguous as to matters of procedure, the Ninth Circuit has endorsed the authority of the district court to require the parties to attempt to resolve the problem, and then to issue an order setting forth the requirements for arbitration if an agreement is not reached." *iTalk Glob. Commc'ns Inc. v. Hanya Star Ltd.*, No. 212-CV-03469-SVWFFMX, 2013 WL 12134129, at *1 n.1 (C.D. Cal. Dec. 19, 2013) (citing *Bauhinia Corp. v. China Nat. Mach. & Equip. Import & Export Corp.*, 819 F.2d 247, 249–50 (9th Cir. 1987)). This course of action aligns with the "strong federal policy [that] favors arbitration." *Bauhinia*, 819 F.2d at 249; *see also Moses*, 460 U.S. at 24–25 ("[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]").

As to Plaintiff's argument that the venue provision in § 3(c) conflicts with the arbitration provision in § 3(d), the Ninth Circuit rejected a similar argument in *Mohamed*. The employment agreement at issue in *Mohamed* included a provision that "delegated to the arbitrators the authority to decide issues relating to the 'enforceability, revocability or validity of the Arbitration Provision.'" 848 F.3d at 1209. The district court had determined that the delegation provision conflicted with venue provisions elsewhere in the agreement, which stated "any disputes, actions, claims, or causes of action arising out of or in connection with this Agreement . . . shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco." *Id.* The Ninth Circuit disagreed, emphasizing,

> No matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an

6

> arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies. It is apparent that the venue provision here was intended for these purposes, and to identify the venue for any other claims that were not covered by the arbitration agreement. That does not conflict with or undermine the agreement's unambiguous statement identifying arbitrable claims and arguments.

*Id.* (internal citation and quotation marks omitted). As such, the court held "[t]he delegation provisions clearly and unmistakably delegated the question of arbitrability to the arbitrator . . . [and] we are required to enforce these agreements 'according to their terms.'" *Id.* For the same reasons articulated in *Mohamed*, the Court concludes that the venue provision in § 3(c) does not "conflict with or undermine the agreement's unambiguous" delegation provision in § 3(d). *Id.*

Accordingly, Plaintiff fails to persuade the Court that the delegation provision is ambiguous. The Court thus concludes the delegation provision is not unenforceable on that basis.

### C. Unconscionability

Plaintiff next argues the agreement is unenforceable because it is unconscionable. Plaintiff contends the agreement is procedurally unconscionable because: (1) the employment agreement was presented on a "take-it-or-leave-it" basis; (2) the arbitration provision was "buried" within the agreement; and (3) the agreement did not include a copy of what arbitration rules apply. (ECF No. 9 at 11.) Plaintiff also argues the agreement is substantively unconscionable because it requires an employee to: (1) arbitrate the kinds of disputes that an employee is likely to bring, while exempting from arbitration claims the employer is likely to bring; (2) waive jurisdictional objections; and (3) be subjected to Illinois law. (*Id.* at 12.)

None of Plaintiff's unconscionability arguments single out the delegation provision. To the contrary, Plaintiff appears to challenge the agreement as a whole, with special emphasis on several provisions *other than* the delegation provision. Although the Court generously construed Plaintiff's other arguments to be "specific to the delegation provision," the Court declines to take such a leap with Plaintiff's broad unconscionability arguments. *Mohamed*, 848 F.3d at 1210 ("When considering an unconscionability challenge to a delegation provision, the court must consider only arguments specific to the delegation provision.") (citation and internal quotation marks omitted); *see also Willis v. Fitbit, Inc.*, No. 19-CV-01377-DMS-WVG, 2020 WL 417943,

at *4 (S.D. Cal. Jan. 27, 2020). Therefore, the merits of Plaintiff's unconscionability arguments must be decided by the arbitrator.

In sum, the delegation provision clearly and unmistakably provides that the enforceability of the arbitration agreement is a question for the arbitrator, not the Court. Similarly, although the parties argue at length about the arbitrability of Plaintiff's class and PAGA claims, it appears those issues also fall within the delegation provision. Plaintiff does not argue otherwise. Therefore, the Court GRANTS Defendant's motion to compel arbitration to allow the arbitrator to decide these gateway issues and, if permissible, arbitrate the substantive claims.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration and stay the case pending arbitration is GRANTED. (ECF No. 6.) To the extent the arbitration clause is silent as to the rules, procedures, and other terms that will govern arbitration, the parties must reach an agreement within sixty (60) days on how the arbitration will proceed and inform the Court of their agreement. If the parties are unable to reach a mutual agreement, the Court will order the terms of the arbitration.

In addition, the Court STAYS the litigation to permit an arbitrator to decide the gateway issues and then, if permissible, to arbitrate the substantive claims. If it is determined by the arbitrator that certain claims are not subject to arbitration, Plaintiff may file a request to lift the stay, and the Court will do so immediately. Within 14 days of the completion of arbitration proceedings, the parties shall jointly submit a report advising the Court of the outcome of the arbitration, and request to dismiss the case or vacate the stay.

IT IS SO ORDERED.

DATED: October 6, 2020

Troy L. Nunley
United States District Judge